UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALDER CRUZ,

*Plaintiff,*

v.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, *et al.,*

*Defendants.*

Civil Action No. 19-2727 (DLF)

## MEMORANDUM OF POINTS AND AUTHROITES IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

JESSIE K. LIU
*United States Attorney*

DANIEL F. VAN HORN
*Chief, Civil Division*

JOHNNY H. WALKER
*Assistant United States Attorney*

United States Attorney's Office
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
johnny.walker@usdoj.gov

Dated: October 30, 2019

*Counsel for Defendants*

# CONTENTS

*Table of Authorities*................................................................................................iii

INTRODUCTION ....................................................................................................1

BACKGROUND .....................................................................................................2

    A.    Statutory Background ....................................................................................2

    B.    Factual Background ........................................................................................3

        1.    Migrant Protection Protocols ............................................................3

        2.    Alder Cruz ........................................................................................5

    C.    Procedural History ........................................................................................6

STANDARDS...........................................................................................................7

    A.    Transfer under 28 U.S.C. § 1404(a)................................................................7

    B.    Preliminary Injunction ..................................................................................8

ARGUMENT............................................................................................................9

I.    This case should be transferred to the Western District of Texas.......................9

    A.    This case could have been brought in the Western District of Texas....................9

    B.    The private- and public-interest factors weigh in favor of transfer .....................10

        1.    Where the Claims Arose ..................................................................10

        2.    Convenience of the Parties and Witnesses ..............................................11

        3.    Access to Sources of Proof ...............................................................12

        4.    Public-Interest Factors .....................................................................12

        5.    Plaintiff's and Defendants' Choices of Forum .........................................13

II.    Plaintiff is unlikely to succeed on the merits ...................................................14

    A.    MPP is authorized by the INA ........................................................................14

    B.    Plaintiff's other substantive APA claims are jurisdictionally barred ...................17

        1.    § 1252(a)(2)(B)(ii) ..........................................................................17

2.      § 1252(b)(9) ............................................................................19

C.      Plaintiff's claims fail on the merits .....................................................21

1.      Due Process.............................................................................21

2.      Equal Protection.......................................................................23

3.      Nonrefoulement .......................................................................24

D.      MPP is not a legislative rule requiring notice and comment ...............................25

III.    The remaining factors weigh against a preliminary injunction .......................................26

IV.     The injunction sought by Plaintiff is overbroad ..............................................28

CONCLUSION.........................................................................................................29

# AUTHORITIES

Page(s)

**Cases**

*Aguilar v. ICE,*
   510 F.3d 1 (1st Cir. 2007) ................................................................................................ 20, 21

*Am. Immigration Lawyers Ass'n v. Reno,*
   18 F. Supp. 2d 38 (D.D.C. 1998) ............................................................................................ 22

*Aracely v. Nielsen,*
   319 F. Supp. 3d 110 (D.D.C. 2018) ........................................................................................... 7

*Aviation Consumer Action Project v. Washburn,*
   535 F.2d 101 (D.C. Cir. 1976) ................................................................................................ 28

*Block v. Cmty. Nutrition Inst.,*
   467 U.S. 340 (1984) ................................................................................................................. 19

*Bourdon v. Dep't of Homeland Sec.,*
   No. 17-15787, 2019 WL 4865825 (11th Cir. Oct. 3, 2019) .................................................... 19

*Castro v. Dep't of Homeland Sec.,*
   835 F.3d 422 (3d Cir. 2016) .................................................................................................... 22

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ...................................................................................... 8, 26, 27

*Chrysler Corp. v. Brown,*
   441 U.S. 281 (1979) ................................................................................................................. 26

*Clarian Health West, LLC v. Hargan,*
   878 F.3d 346 (D.C. Cir. 2017) ................................................................................................ 25

*Columbia Hosp. for Women Found. v. Bank of Tokyo–Mitsubishi, Ltd.,*
   15 F. Supp. 2d 1 (D.D.C. 1997) ................................................................................................ 8

*Cuomo v. U.S. Nuclear Regulatory Comm'n,*
   772 F.2d 972 (D.C. Cir. 1985) .................................................................................................. 8

*Davis v. Pension Ben. Guar. Corp.,*
   571 F.3d 1288 (D.C. Cir. 2009) ................................................................................................ 9

*Garcia v. Thomas,*
   683 F.3d 952 (9th Cir. 2012) .............................................................................................. 24, 25

*Gebhardt v. Nielsen,*
    879 F.3d 980 (9th Cir. 2018) ......................................................................... 19

*Gisbert v. United States Att'y Gen.,*
    988 F.2d 1437 (5th Cir.1993) ....................................................................... 22

*Gov't Procurement v. United States,*
    576 F. Supp. 2d 162 (D.D.C. 2008) ............................................................. 26

*Hernandez Culajay v. McAleenan,*
    --- F. Supp. 3d ---, 2019 WL 3889737 (E.D. Pa. Aug. 19, 2019) ............... 21

*Hoxha v. Levi,*
    465 F.3d 554 (3d Cir. 2006) .......................................................................... 24

*Hunter v. Johanns,*
    517 F. Supp. 2d 340 (D.D.C. 2007) ....................................................... 13, 15

*Innovation Law Lab v. McAleenan,*
    924 F.3d 503 (9th Cir. 2019) ......................... 3, 4, 6, 16, 17, 18, 26

*J.E.F.M. v. Lynch,*
    837 F.3d 1026 (9th Cir. 2016) ...................................................................... 20

*Jennings v. Rodriguez,*
    138 S. Ct. 830 (2018) ............................................................................ 2, 3, 20

*Jilin Pharm. USA, Inc. v. Chertoff,*
    447 F.3d 196 (3d Cir. 2006) .......................................................................... 18

*Kiyemba v. Obama,*
    561 F.3d 509 (D.C. Cir. 2009) ...................................................................... 24

*League of Women Voters of U.S. v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) ................................................................. 8, 9, 11

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) ...................................................................................... 25

*M.S.P.C. v. U.S. Customs & Border Prot.,*
    60 F. Supp. 3d 1156 (D.N.M. 2014) ............................................................ 22

*M & K Engineering Inc. v. Johnson,*
    814 F.3d 481 (1st Cir. 2016) ......................................................................... 18

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) ...................................................................................... 28

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ................................................................................................ 21

*Matter of E-R-M & L-R-M,*
    25 I. & N. Dec. 520 (BIA 2011) ............................................................................. 3, 15

*Matter of I-S- & C-S-,*
    24 I. & N. Dec. 432 (BIA 2008) .............................................................................. 25

*Matter of M-S-,*
    27 I. & N. Dec. 509 (A.G. 2019) ............................................................................. 15

*Mohammed v. Sessions,*
    362 F. Supp. 3d 8 (D.D.C. 2019) ............................................................................ 18

*Montgomery v. STG Int'l, Inc.,*
    532 F. Supp. 2d 29 (D.D.C. 2008) .................................................................... 10, 11

*Nat'l Conf. on Ministry to Armed Forces v. James,*
    278 F. Supp. 2d 37 (D.D.C. 2003) ............................................................................ 8

*Newdow v. Bush,*
    355 F. Supp. 2d 265 (D.D.C.2005) .................................................................... 27, 28

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC,*
    48 F. Supp. 3d 87 (D.D.C. 2014) ....................................................................... 27, 28

*Pacific Gas & Elec. Co. v. FPC,*
    506 F.2d 33 (D.C. Cir. 1974) ................................................................................... 25

*Pursuing Am.'s Greatness v. FEC,*
    831 F.3d 500 (D.C. Cir. 2016) ................................................................................... 8

*Rafeedie v. INS,*
    880 F.2d 506 (D.C. Cir. 1989) ................................................................................. 21

*Ravulapalli v. Napolitano,*
    773 F. Supp. 2d 41 (D.D.C. 2011) ................................................................... 7, 8, 10

*Reno v. Am.-Arab Anti Discrim. Comm.,*
    525 U.S. 471 (1999) ................................................................................................ 20

*Schmidt v. Am. Inst. of Physics,*
    322 F. Supp. 2d 28 (D.D.C. 2004) ........................................................................... 13

*SEC v. Savoy Indus. Inc.,*
    587 F.2d 1149 (D.C. Cir. 1978) ................................................................................. 7

*Shaughnessy v. United States ex rel. Mezei,*
    345 U.S. 206 (1953) ................................................................................ 21, 22

*Singh v. Gonzales,*
    499 F.3d 969 (9th Cir. 2007) ...................................................................... 20

*Singh v. McConville,*
    187 F. Supp. 3d 152 (D.D.C. 2016) ............................................................. 9

*Smirnov v. Clinton,*
    806 F. Supp. 2d 1 (D.D.C. 2011) ............................................................ 21, 26

*State of Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.,*
    435 F.3d 326 (D.C. Cir. 2006) .................................................................... 28

*Syncor Int'l Corp. v. Shalala,*
    127 F.3d 90 (D.C. Cir. 1997) ...................................................................... 25

*Trout Unlimited v. U.S. Dep't of,*
    *Ag.*, 944 F. Supp. 13 (D.D.C. 1996) .......................................................... 7, 8

*Trump v. Hawaii,*
    138 S. Ct. 2392 (2018) ............................................................................... 23

*United States Ass'n of Reptile Keepers, Inc. v. Jewell,*
    106 F. Supp. 3d 125 (D.D.C. 2015) ........................................................... 29

*United States v. Aponte-Guzman,*
    696 F.3d 157 (1st Cir. 2012) ...................................................................... 18

*Utah Wilderness Alliance v. Norton,*
    315 F. Supp. 2d 82 (D.D.C. 2004) ............................................................... 7

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) ..................................................................................... 7

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ...................................................................................... 8, 9

*Zadvydas v. Davis,*
    533 U.S. 678 (2001) ................................................................................... 22

**Statutes**

5 U.S.C. § 553(b)(B) ........................................................................................ 25

5 U.S.C. § 701(a) ............................................................................................. 18

8 U.S.C. § 1101 ................................................................................................. 2

8 U.S.C. § 1225(a)(1) ................................................................................................ 2

8 U.S.C. § 1225(b)(1)(B) ........................................................................................... 2

8 U.S.C. § 1225(b)(2)(A) ............................................................................. 2, 3, 14, 16

8 U.S.C. § 1225(b)(2)(C) ............................................................................. 3, 14, 16, 18

8 U.S.C. § 1229a ......................................................................................................... 3

8 U.S.C. § 1231 ......................................................................................................... 25

8 U.S.C. § 1231(b)(3) ............................................................................................... 25

8 U.S.C. § 1252(a)(2)(D) .......................................................................................... 19

8 U.S.C. § 1362 ......................................................................................................... 21

28 U.S.C. § 1391(e)(1)(B) .......................................................................................... 9

28 U.S.C. § 1404(a) .................................................................................................... 7

**Regulations**

8 C.F.R. § 235.6(a)(1)(ii) ........................................................................................... 2

8 C.F.R. § 1003.11 ................................................................................................... 12

## INTRODUCTION

Defendants, the U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), the Acting Commissioner of CBP, U.S. Immigration and Customs Enforcement ("ICE"), and the Acting Director of ICE, respectfully submit this memorandum of points and authorities in support of their motion to transfer venue and in opposition to Plaintiff's motion for a preliminary injunction. As an initial matter, this case should be promptly transferred to the United States District Court for the Western District of Texas prior to any further proceedings. That is the location where Plaintiff's claims arose, where any witnesses and sources of proof are located, and it would better serve the public interest to litigate this case there.

Should the Court opt to proceed with the case here, it should begin by denying Plaintiff's motion for a preliminary injunction. Plaintiff unlawfully entered the United States through Mexico and was returned to Mexico pending his removal proceedings pursuant to the Migrant Protection Protocols ("MPP"). Plaintiff challenges his return as contrary to the Immigration and Nationality Act ("INA"), several constitutional provisions, and the international principle of nonrefoulement as enshrined in domestic statutes and regulations. These claims are not likely to succeed on the merits. MPP is specifically authorized by the INA. Further, Plaintiff's claims arising from the constitution and nonrefoulement provisions are barred from judicial review by one or more provisions of the INA. They also fail on the merits. Plaintiff has also failed to show with any specificity that he will suffer irreparable harm absent the injunction or that the injunction will be in the public interest. For these reasons, the motion should be denied. And even if the motion were not denied, the injunction to which Plaintiff would be entitled cannot be as broad as he requests.

# BACKGROUND

A.   <u>Statutory Background</u>

Congress has enacted a comprehensive collection of procedures governing the admission of aliens into the United States, which is enshrined in the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq*. At issue in this case are the procedures that apply to aliens who are "applicants for admission," *i.e.*, those aliens present in the United States who have not been admitted as well as those who arrive at a port of entry. 8 U.S.C. § 1225(a)(1). If an immigration officer finds that such an alien is inadmissible, then the officer must determine whether to place the alien into one of two categories: expedited removal under § 1225(b)(1) or removal proceedings under §§ 1225(b)(2) and 1229a. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018).

Expedited removal, described in § 1225(b)(1), provides for the swift removal of aliens "without further hearing or review," 8 U.S.C. § 1225(b)(1)(a)(i), if they are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," *Jennings*, 138 S. Ct. at 837 (citing 8 U.S.C. § 1225(b)(1)(A)(i) (in turn citing *id.* § 1182(a)(6)(C), (a)(7)). The statute provides an exception where the alien indicates an intention to apply for asylum or a expresses a fear of persecution, in which case the alien is entitled to an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(ii). And if the asylum officer finds that the applicant has a credible fear of persecution, the alien is entitled to referral of his or her case for an asylum hearing. 8 C.F.R. § 235.6(a)(1)(ii); *see also* 8 U.S.C. § 1225(b)(1)(B).

Removal proceedings, on the other hand, apply to a "broader" category of aliens outlined in § 1225(b)(2)(A), which "serves as a catchall provision that applies to all applicants for admission not" designated for expedited removal. *Jennings*, 138 S. Ct. at 837. Any alien who "is not clearly and beyond a doubt entitled to be admitted . . . shall be detained for" a removal proceeding under § 1229a. 8 U.S.C. § 1225(b)(2)(A). Removal proceedings entail more extensive

procedural protections, including a hearing before an immigration judge and a right to appellate review by the Board of Immigration Appeals. *See* 8 U.S.C. § 1229a. In removal proceedings, unlike expedited removal proceedings, aliens receive written notices to appear at their immigration hearings. *See* 8 U.S.C. § 1229a. It is well-settled that "DHS has discretion to put aliens in [full] removal proceedings even though they may also be subject to expedited removal." *Matter of E-R-M & L-R-M*, 25 I. & N. Dec. 520, 523 (BIA 2011); *see also* Pl.'s PI Br. at 6 (acknowledging this). Applicants for admission who are placed in removal proceedings are "detained for" the duration of their "removal proceedings" unless they are temporarily paroled. *Jennings*, 138 S. Ct. at 837, 842; 8 U.S.C. §§ 1225(b)(2)(A), 1182(d)(5).

As an alternative to detention, however, Congress provided that "[i]n the case of an alien described in subparagraph A [of § 1225(b)(2)] who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(C). This contiguous return authority, which is the subject of Plaintiff's complaint, authorizes the Secretary of DHS, at his discretion, to temporarily return aliens arriving by land from Mexico or Canada to those countries "during the pendency of § 1229a removal proceedings." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 509 (9th Cir. 2019).

B.     <u>Factual Background</u>

1.     *Migrant Protection Protocols*

In December 2018, the Secretary of DHS announced the implementation of Migrant Protection Protocols ("MPP"). Invoking the contiguous return authority in § 1225(b)(2)(C), MPP provides that certain aliens arriving in the United States by land from Mexico who are not admissible and who are placed in removal proceedings may be returned to Mexico pending their

removal proceedings. *See* Ex. 1, DHS, *Guiding Principles for Migrant Protection Protocols* at 1–2 (Jan. 28, 2019) ("DHS Guidance"). Thus, under MPP, applicants for admission "are processed for standard removal proceedings, instead of expedited removal," and "wait in Mexico until an immigration judge" in the United States "resolves their asylum claims." *Innovation Law Lab*, 924 F.3d at 506.  Immigration officers "exercise discretion" in deciding whom to place in MPP, but MPP is "categorically inapplicable to unaccompanied minors, Mexican nationals, applicants who are processed for expedited removal, and any applicant who is more likely than not to face persecution or torture in Mexico." *Innovation Law Lab*, 924 F.3d at 506; *see also* Ex. 2, CBP, *MPP Guiding Principles* at 1 (Jan. 28, 2019) ("CBP Guidance").

The discretionary authority outlined in MPP is exercised in accordance with the principle of nonrefoulement. *See* Ex. 3, USCIS, *Guidance for Implementing Section 235(b)(2)(C) of the Immigration and Nationality Act and the Migrant Protection Protocols* at 2 (Jan. 28, 2019) ("USCIS Guidance"). Accordingly, aliens who express a fear of persecution or torture in Mexico are entitled to an interview with an asylum officer. *See id.* at 3. That interview, which assesses whether an alien would more likely than not be persecuted based on a protected ground or tortured if returned to Mexico, is conducted "in a non-adversarial manner, separate and apart from the general public," and the results of the interview "shall be reviewed by a supervisory asylum officer, who may change or concur with the assessment's conclusion." *Id.* at 3–4.

Aliens subject to MPP are informed that they are entitled to representation by counsel during their removal proceedings. Press Release, *Migrant Protection Protocols* (Jan. 24, 2019) ("Aliens subject to MPP will be afforded the same right [to counsel] and provided with a list of legal services providers in the area which offer services at little or no expense to the migrant.").[1]

---

[1] Available at https://www.dhs.gov/news/2019/01/24/migrant-protection-protocols

If an alien placed in MPP ultimately becomes the subject of a final order of removal, then that alien is removed in accordance with the INA and DHS's regulations.

Thus far, DHS has observed that MPP is accomplishing its stated goals, as "DHS has observed a connection between MPP implementation and decreasing enforcement actions at the border—including a rapid and substantial decline in apprehensions in those areas where the most amenable aliens have been processed and returned to Mexico pursuant to MPP." *Assessment of the Migrant Protection Protocols (MPP)* at 2 (Oct. 28, 2019).[2]  In addition, "MPP returnees with meritorious claims" are being "granted relief or protection within months, rather than remaining in limbo for years while awaiting immigration court proceedings in the United States." *Id.* at 3.

2.   *Alder Cruz*

Plaintiff Alder Cruz is a citizen of Guatemala who entered the United States through Mexico unlawfully on May 10, 2019. ECF No. 5-3 at 1. He alleges that he "fled Guatemala to seek asylum in the United States on May 3, 2019" because he "experienced death threats and the recent murder of his best friend." Compl. ¶¶ 12, 19. He claims he was "targeted by a criminal gang because his sister . . . is the leader of a church group which helps children escape from a life of crime with the Mara gangs." *Id.* ¶ 19. The complaint states that Plaintiff was apprehended near the Eagle Pass Port of Entry in Texas and was also returned to Mexico through there. *Id.* ¶ 27. He asserts that he "is in danger in Mexico because he was forcibly expelled from the U.S." under MPP. *Id.* ¶ 2.

Plaintiff also submitted a translated sworn statement with his complaint and motion for a preliminary injunction. According to the statement, Plaintiff and his brother fled Guatemala

---

[2] Available at https://www.dhs.gov/sites/default/files/publications/assessment_of_the_migrant_ protection_protocols_mpp.pdf

because they feared for their lives after gang members threatened him if we would not provide information about his sister. ECF No. 5-3 at 1–2. After he entered the United States from Mexico without authorization, he was immediately apprehended by U.S. Border Patrol agents the same day. *Id.* at 2. He was held in DHS custody in Santa Teresa, New Mexico, until he was transferred to "D[e]ming, New Mexico" where "a lady took down [his] information and called [his other sister] asking her if she knew [him] and if it would be possible to send [Plaintiff and his brother] with her." *Id.* He completed documents, including processing documents and "information on the place [he] would go (Miami, FL)." *Id.* On May 27, Plaintiff states he was transferred from Deming to El Paso, Texas. *Id.* On June 6, 2019, he was returned directly from Texas to Mexico, pursuant to MPP. *Id.* at 3–4.

Plaintiff also attached what appears to be a screenshot of a photograph of his Notice to Appear, which sets a hearing for July 30, 2019, before an immigration judge in El Paso for removal proceedings and an asylum claim. ECF No. 5-2. On or around that date, Plaintiff was interviewed by an asylum officer to determine whether there was a clear probability that he would be persecuted on account of a protected ground or tortured in Mexico. *See* Ex. 4, MPP Assessment Notice (July 31, 2019). The asylum officer determined that Plaintiff did not establish a clear probability of persecution or torture in Mexico. *Id.*

C.    Procedural History

Plaintiff initially filed this case on July 5, 2019, in the United States District Court for the Southern District of Florida. *See Cruz v. Dep't of Homeland Sec.*, No. 19-22780 (S.D. Fla.). On July 21, 2019, he moved in that case for a preliminary injunction. *Id.*, ECF No. 6. Days later, on July 26, the government moved to transfer venue to the Western District of Texas. *Id.*, ECF No. 11. Plaintiff did not respond to that motion; instead, on August 3, 2019, he filed a notice of

voluntary dismissal. ECF No. 17. Over a month later, on September 11, 2019, he filed substantially the same complaint in this Court. *See* ECF No. 1. After waiting another month, he filed substantially the same motion for a preliminary injunction that he filed in Florida. *See* ECF No. 5. Defendants now oppose that motion and renew their request that this case be transferred to the Western District of Texas.

## STANDARDS

A.    Transfer under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice" so long as the transferee district is one where the case "might have been brought." Subsection 1404(a) affords the Court broad discretion in determining whether transfer another is appropriate. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 55 (D.D.C. 2011) (citing *SEC v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978)).

The moving party bears the burden of establishing that plaintiff's choice of forum is inappropriate and that the case should be transferred to another venue. *See So. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004). To meet that burden, the moving party must make two showings. First, the movant must establish that the plaintiff could have brought the action in the proposed transferee district. *See Aracely v. Nielsen*, 319 F. Supp. 3d 110, 127–28 (D.D.C. 2018) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616–17 (1964)). Second, the movant must show that "considerations of convenience and the interest of justice weigh in favor of transfer to that district." *See Aracely*, 319 F. Supp. 3d at 127 (citing *Trout Unlimited v. U.S. Dep't of Ag.*, 944 F. Supp. 13, 16 (D.D.C. 1996)). In evaluating whether defendants have made this second

showing, courts typically weigh several private- and public-interest factors. *See id.*; *Ravulapalli*, 773 F. Supp. 2d at 55–56.

     B.     <u>Preliminary Injunction</u>

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain one, a movant must make a "clear showing that four factors, taken together, warrant relief." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). Those four factors are:

> (1) a substantial likelihood of success on the merits, (2) that [the movant] would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Further, when a party seeks a mandatory injunction that would alter the status quo rather than preserve it, as Plaintiff does here, "the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage will result from the denial of the injunction.'" *Nat'l Conf. on Ministry to Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) (quoting *Columbia Hosp. for Women Found. v. Bank of Tokyo–Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd* 159 F.3d 636 (D.C. Cir. 1998)).

The D.C. Circuit has in the past applied a "sliding scale" approach to the four factors, holding that "[i]njunctive relief may be granted with either a high likelihood of success and some injury, or vice versa." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). In 2008, however, the Supreme Court decided *Winter*, which rejected the notion that "when a plaintiff demonstrates a strong likelihood of prevailing on the merits," a court could enter an injunction on a showing of the "possibility" of irreparable harm. 555 U.S. at 21. Instead, the Court

held, a plaintiff seeking preliminary relief must always "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (emphasis in the original). Following *Winter*, courts in this Circuit, including this Court, have held that a movant must show that irreparable injury is "likely," regardless of its showing on the merits. *See Singh v. McConville*, 187 F. Supp. 3d 152, 160 (D.D.C. 2016). The court of appeals, however, has not yet had the opportunity to reconsider the viability of its sliding-scale approach in light of *Winter*. *See League of Women Voters*, 838 F.3d at 7; *see also Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009) (noting that *Winter* "could be read to create a more demanding burden").

## ARGUMENT

### I.    This case should be transferred to the Western District of Texas.

For the same reasons that the government asserted in the Southern District of Florida, Plaintiff's claims should be transferred from this district to the Western District of Texas. Plaintiff could have brought this case there, and the convenience of the parties and the interests of justice are best served there. The Western District of Texas is where MPP was applied to Plaintiff, where any individual decisions concerning his placement in MPP occurred and will occur in the future should further decisions be needed, and where his immigration proceedings will take place. For these reasons, transfer to the Western District of Texas is appropriate.

#### A.    This case could have been brought in the Western District of Texas.

As a threshold matter, venue is proper in the Western District of Texas because "a substantial part of the events or omissions giving rise to the claim occurred" there. 28 U.S.C. § 1391(e)(1)(B). The Western District of Texas is where Plaintiff was detained from May 27 to June 6, after his unauthorized entry into the United States. ECF No. 5-3 at 2–3. The Western District of Texas is also where MPP was applied to him—the action he challenges in this case—

and the place from which he was returned to Mexico to await his removal proceedings. *See* Compl. ¶ 27. It is also where his immigration court proceedings will take place. *See* ECF No. 5-2. And the government is amenable to process issuing out of the Western District of Texas through the U.S. Attorney's Office for that District. Accordingly, Plaintiff could have brought his action in the Western District of Texas. And for the reasons discussed below, he should have done so.

B.        The private- and public-interest factors weigh in favor of transfer.

In determining whether to transfer, courts in this district weigh several private- and public-interest factors. *See Ravulapalli*, 773 F. Supp.2d at 55–56. The private interest factors typically include: "1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts, and 6) the ease of access to sources of proof." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32–33 (D.D.C. 2008). "The public factors usually weighed in considering a motion to transfer include: 1) the transferee's familiarity with the governing laws, 2) the relative congestion of each court, and 3) the local interest in deciding local controversies at home." *Id.* at 34.

1.        *Where the Claims Arose*

Perhaps the most important factor, the location where the claims arose weighs heavily in favor of transfer to the Western District of Texas. The operative facts underlying Plaintiff's claims took place exclusively in the Western District of Texas and the District of New Mexico, and none of them occurred in the District of Columbia. According to the complaint, the Western District of Texas is where Plaintiff was returned to Mexico under MPP. *See* Compl. ¶ 27. Additionally, Plaintiff's removal proceedings are taking place within the Western District of Texas. ECF No. 5-

2. And, according to his statement, Plaintiff was detained in the Western District of Texas from May 27 to June 6. ECF No. 5-3 at 2–3.

The only other venue where part of the events allegedly giving rise to the claims took place is the District of New Mexico, where the statement asserts that Plaintiff was in custody for 17 days. *Id*. at 2. The statement also says that Plaintiff was "processed" by U.S. immigration personnel at a facility in Deming, New Mexico, including an interview and submission of paperwork. *Id*. Obviously, New Mexico is much closer to the Western District of Texas than to the District of Columbia. Indeed, according to Google Maps, the federal court in El Paso, Texas is only about 100 miles from Deming, New Mexico.

For these reasons, the location where the claims arose strongly favors transfer out of the District of Columbia to the Western District of Texas.

2.    *Convenience of the Parties and Witnesses*

The convenience of the parties also favors transfer to the Western District of Texas. Most notably, Plaintiff's immigration court proceedings are being held in the Western District of Texas (specifically, El Paso), and he is permitted to enter the United States to participate in those proceedings. See ECF No. 5-2. It would be more convenient for Plaintiff to litigate both his immigration proceedings and this case in the same judicial district.

Further, while this case challenges agency action under the Administrative Procedure Act ("APA") and therefore will not require any witnesses, any personnel involved in the challenged decision-making applied to Plaintiff are more likely to be located in the Western District of Texas or its close neighbor, the District of New Mexico, not in this district. Accordingly, the Western District of Texas would be more convenient to Defendants. Moreover, in the unusual event that witnesses are necessary in this case, those witnesses are likely to be found in either the Western

District of Texas or the District of New Mexico, where Plaintiff was apprehended, detained, and processed by employees of DHS before being returned to Mexico. Travel to the District of Columbia from either of these Districts would be long and burdensome. On the other hand, any witnesses in the El Paso area are likely already present in the Western District of Texas, and travel for anyone from the Deming, New Mexico station to the Western District of Texas would be far more reasonable than to the District of Columbia.

Accordingly, both the convenience of the parties and the convenience of the witnesses favors transfer.

3.     *Access to Sources of Proof*

The defendant agencies regularly maintain records, including Alien Files ("A-Files"), in physical paper form. Plaintiff's A-File is currently physically located in El Paso, and the immigration court in El Paso is charged with maintaining a physical record of its proceedings. *See* 8 CFR §§ 1003.11, 1003.36. A-Files often contain documents that make up part of the administrative record for APA challenges. Further, Plaintiff's statement says that Plaintiff submitted paperwork to immigration enforcement personnel in Deming, New Mexico. ECF No. 5-3 at 2. There is no suggestion that any physical documents or sources of proof are located in the District of Columbia. Should there be any need to access physical documents, they are most likely to be found in the District of New Mexico and the Western District of Texas, with many key documents located in the Western District of Texas.

4.     *Public-Interest Factors*

The public-interest factors also favor transfer to the Western District of Texas. First, the Western District of Texas has greater familiarity with the governing law. The issues here relate specifically to policies carried out exclusively near the U.S.-Mexico land border, and in Plaintiff's

case, specifically in Texas. Accordingly, because the Western District of Texas is on the border, that court has a greater expertise on the law involving the border and related policies. Second, the District of Columbia's caseload is more congested than the Western District of Texas. According to the Administrative Office of U.S. Courts, as of June 30, 2019, this 15-judgeship court was burdened with 663 cases over 3 years old (16.5 percent of its docket), while the 13-judgeship Western District of Texas had only 153 cases over 3 years old (5.2 percent of its docket).[3] Third, the Western District of Texas—which shares a long border with Mexico—has a much stronger interest in the policies and activities carried out in the immediate vicinity of the U.S.-Mexico border than does the District of Columbia. The public interest therefore strongly favors transfer.

5.    *Plaintiff's and Defendants' Choices of Forum*

Defendants, by this motion, clearly choose the Western District of Texas as the most convenient and appropriate forum. Defendants recognize that courts ordinarily give deference to a plaintiff's choice of forum, *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 33 (D.D.C. 2004), but if the plaintiff is not a resident of the forum and "most of the relevant events occurred elsewhere," this deference is weakened. *Hunter v. Johanns*, 517 F. Supp. 2d 340, 344 (D.D.C. 2007). Such is the case here, Plaintiff is not a resident of the District of Columbia and indeed has no expressed personal connection to the District of Columbia whatsoever. In such cases, the Court's deference to Plaintiff's choice—which appears to have actually been the Southern District of Florida in the first instance—is diminished.

---

[3] *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf

II.     **Plaintiff is unlikely to succeed on the merits.**

Plaintiff brings a number of claims challenging MPP and its application to him. For the reasons explained below, however, none those claims are likely to succeed on the merits, and Plaintiff's motion for a preliminary injunction should therefore be denied.

A.     MPP is authorized by the INA.

Plaintiff first argues that his return to Mexico pursuant to MPP violates the INA because DHS's contiguous return authority may be exercised as to aliens subject to removal proceedings only, not those, like him, who also qualify for expedited removal. *See* Pl.'s PI Br. at 5–9. But as Plaintiff concedes, *see* Pl.'s PI Br. at 6, DHS may make *any* alien not clearly entitled to admission—including those who qualify for expedited removal—subject to removal proceedings, and it did so here. Accordingly, DHS is not prohibited from exercising its contiguous return authority over applicants for admission who are eligible for expedited removal but who have been put into removal proceedings at DHS's discretion. This includes Plaintiff.  And once the decision was made to place Plaintiff in full, not expedited, removal proceedings, the exercise of the contiguous return authority was lawful.

The statutory language bears this out. It states that DHS may exercise its contiguous removal authority "in the case of an alien described in [§ 1225(b)(2)(A)]," which describes aliens subject to removal proceedings. 8 U.S.C. § 1225(b)(2)(C), (A). Whether an alien is subject to removal proceedings, in turn, depends upon a "determination" by an immigration officer. As a general matter, "if the examining immigration officer *determines* that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal proceedings]." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Similarly, "[i]f an immigration officer *determines* that an alien . . . is inadmissible [on certain specified grounds, including a lack of proper

documentation] the officer shall order the alien removed from the United States without further hearing or review," *i.e.*, expedited removal. *Id.* § 1225(b)(1)(A)(i) (emphasis added).   In other words, whether an individual is placed in expedited or removal proceedings depends entirely on this antecedent inspection decision. Plaintiff concedes, as he must, that "the government has discretion to place individuals amenable to expedited removal in removal proceedings." Pl.'s PI Br. at 6; *see also Matter of E-R-M & L-R-M-*, 25 I & N Dec. 520, 523 (BIA 2011) ("DHS has discretion to put aliens in [full] removal proceedings even though they may also be subject to expedited removal."); *Matter of M-S-*, 27 I. & N. Dec. 509, 510 (A.G. 2019) ("[I]f the alien is inadmissible on one of two specified grounds and meets certain additional criteria, DHS may place him in either expedited or full proceedings."). Here, it is uncontroverted that that an immigration officer "determined" that Plaintiff would be placed in removal proceedings, as demonstrated by the fact that Plaintiff was issued a Notice to Appear. *See* ECF No. 5-2. Plaintiff was therefore subject to the removal proceedings prescribed by § 1225(b)(2)(A), and, by extension, he was also properly subject to the contiguous removal authority at § 1225(b)(2)(C).

Plaintiff contends that DHS is restrained from exercising its contiguous removal authority here because—despite the fact that he is in removal proceedings—he *could* have been subjected to expedited removal under § 1225(b)(1). Pl.'s PI Br. at 5–9. This argument hinges on Plaintiff's reading of § 1225(b)(2)(B), which delineates three situations in which § 1225(b)(2)(A) "shall not apply." Relevant here, Clause 1225(b)(2)(B)(ii) states that "[§ 1225(b)(2)(A)] shall not apply to an alien to whom paragraph [(b)](1) applies." Plaintiff argues that because § 1225(b)(1) "applies" to him, § 1225(b)(2)(A) does not "apply" and neither, by extension, may the contiguous removal authority at § 1225(b)(2)(C). Pl.'s PI Br. at 5–9.

Plaintiff's argument is flawed, however, because ascertaining whether or not § 1225(b)(1) "applies" to a particular alien depends, once again, solely on the inspection decision made by immigration officers to place an alien in either expedited or removal proceedings.   Stated differently, "[b]ecause the eligibility criteria for subsections (b)(1) and (b)(2) overlap," courts "can tell which subsection 'applies' to an applicant only by virtue of the processing decision made during the inspection process." *Innovation Law Lab*, 924 F.3d at 508. Here, a discretionary decision was made to place Plaintiff in removal proceedings under § 1225(b)(2). *See* ECF No. 5-2. It therefore follows that § 1225(b)(2)(A)—and not (b)(1)—"applies" to him. *See Innovation Law Lab*, 924 F.3d at 509 ("The plaintiffs were not processed under § 1225(b)(1). We are doubtful that subsection (b)(1) 'applies' to them merely because subsection (b)(1) *could have been applied*."). Instead, when considered in connection with the rest of the statutory scheme, the purpose of the exception elucidated in section 1225(b)(2)(B)(ii) is clear.  Section 1225(b)(1) mandates that aliens placed in expedited removal proceedings shall be removed "without further hearing or review" while section 1225(b)(2)(A) provides that any alien who is not "clearly and beyond a doubt entitled to be admitted" is entitled to be placed in removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  In the absence of section 1225(b)(2)(B)(ii), then, an alien placed in expedited removal proceedings and ordered summarily removed would simultaneously be eligible for a removal proceeding, complete with a hearing.  To eliminate that anomalous result, Congress codified section 1225(b)(2)(B)(ii), which simply clarifies that all aliens processed for expedited removal proceedings "are not entitled to" removal proceedings." *Innovation Law Lab*, 924 F.3d at 508. Because Plaintiff was placed in removal proceedings, however, section 1225(b)(1) does not "appl[y]" to him, and accordingly, DHS's exercise of its contiguous removal authority was lawful. *See* 8 U.S.C. § 1225(b)(2)(C).

Indeed, the Ninth Circuit reached exactly that conclusion based on this same reasoning. *See Innovation Law Lab*, 924 F.3d at 509.

This reading of the statute is eminently sensible because it treats all applicants for admission placed in removal proceedings similarly. Under Plaintiff's interpretation, by contrast, the INA would permit DHS, in the context of removal proceedings, to return non-Mexican asylum applicants entering through Mexico to Mexico *unless* the applicant sought to procure admission through fraud or willful misrepresentation or lacked valid entry document. *See id.* §§ 1225(b)(1)(A)(i), 1182(a)(6)(C), (7). There is no reason to believe the Congress intended such disparate treatment.

Because the INA unambiguously allows DHS to exercise discretionary authority in returning aliens in removal proceedings to the contiguous territory from which they arrived, and because it is undisputed that Plaintiff was placed in removal proceedings, the statutory authority to return Plaintiff to Mexico under MPP was properly exercised.

### B.   Plaintiff's other substantive APA claims are jurisdictionally barred.

In addition to arguing that MPP violates the INA, Plaintiff also contends that it violates his rights to due process and equal protection and that it runs contrary to principles of nonrefoulement that are enshrouded in statute and regulation. Pl.'s PI Br. at 9–28. But Plaintiff will not succeed on these claims because the Secretary's decision to return him to Mexico under MPP—and the procedures followed in making that decision—are barred from judicial review under two separate provisions: § 1252(a)(2)(B)(ii) and (b)(9).

### 1.   *§ 1252(a)(2)(B)(ii)*

All of Plaintiff's constitutional and nonrefoulement claims fail to overcome the bar to judicial review at § 1252(a)(2)(B)(ii). That provision broadly precludes judicial review of the Secretary's denials of discretionary relief. It says: "Notwithstanding any other provision of law

(statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any . . . decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).

The Secretary's return decisions under MPP meet these criteria. First, the return authority is specified in § 1225, which is in the same subchapter as § 1252: Subchapter II, "Immigration," contains Sections 1151 through 1382 of Title 8. Second, the decision to exercise the contiguous return authority is "specified . . . to be in the discretion of" of the Secretary. *Id.* § 1252(a)(2)(B)(ii). The statute provides that "the [Secretary] *may* return the alien to that territory pending a proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(C) (emphasis added); *Mohammed v. Sessions*, 362 F. Supp. 3d 8, 13 (D.D.C. 2019) ("The jurisdiction-stripping provision of § 1252(a)(2)(B)(ii) bars the review of that discretionary decision."); *see also M & K Engineering Inc. v. Johnson*, 814 F.3d 481, 485 (1st Cir. 2016) ("By using the precatory term 'may,' rather than the directory term 'shall,' Congress [in 8 U.S.C. § 1555 of the INA] indicated its intent to make [the decision] discretionary.") (quoting *United States v. Aponte-Guzman*, 696 F.3d 157, 160 (1st Cir. 2012)); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 203, 205 (3d Cir. 2006) ("[The INA] states that the Secretary of Homeland Security . . . *may* revoke approval of a petition . . . . [W]e have no difficulty concluding that the decision . . . is left to the discretion of the Secretary of Homeland Security. And so, pursuant to § 1252(a)(2)(B)(ii), the Court correctly held that it lacked jurisdiction to review this administrative decision." (emphasis in original)). Because the return authority is left to the discretion of the Secretary, the INA proscribes judicial review of return decisions, including review of Plaintiff's claims under the APA. *See* 5 U.S.C. § 701(a) (APA does not apply to "agency action" that "is committed to agency discretion by law" or if "statutes preclude judicial review");

18

*Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (the APA does not provide a basis for federal question jurisdiction where a statute at issue "precludes judicial review").

Further, the INA's bar on judicial review is not limited to the actual return decision itself, but also to the procedures used to arrive at return determinations. *See Bourdon v. Dep't of Homeland Sec.*, No. 17-15787, 2019 WL 4865825, at *5 (11th Cir. Oct. 3, 2019) ("If a court can dictate which arguments the Secretary must entertain or how the Secretary weighs evidence, then the Secretary can hardly be said to have . . . discretion."); *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018) ("It does not matter that Plaintiff characterizes his claims as challenges to the substantive standards that the Secretary uses. The standards by which the Secretary reaches a decision within his or her . . . discretion . . . are just as unreviewable as the Secretary's ultimate decisions themselves."). To obtain judicial review of constitutional or legal questions regarding those procedures, a party must do so through a "petition for review filed with an appropriate court of appeals in accordance with [§ 1252]." 8 U.S.C. § 1252(a)(2)(D); *see also id.* § 1252(a)(2)(B) (no review of discretionary decisions "except as provided in subparagraph (D)"). Accordingly, Plaintiff's claims that the procedures employed by MPP violate due process, deprived him of his right to counsel, did not afford him equal protection, and ignore principles of nonrefoulement are jurisdictionally barred.

2.      *§ 1252(b)(9)*

Plaintiff's right to counsel claims are also independently barred by § 1252(b)(9). The text of § 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

19

This provision operates as an "unmistakable 'zipper' clause" that channels judicial review of "all questions of law and fact," including both "constitutional and statutory" challenges into a petition for review of a final order. *Reno v. Am.-Arab Anti Discrim. Comm.*, 525 U.S. 471, 482–83 (1999). The reach of this provision is capacious. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Section 1252(b)(9) is . . . breathtaking in scope and vise-like in grip and therefore swallows up virtually all claims that are tied to removal proceedings."); *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007) ("[Section 1252(b)(9)'s] expanse is breathtaking . . . . By its terms, the provision aims to consolidate *all* questions of law and fact that arise from either an action or a proceeding brought in connection with the removal of an alien." (emphasis in original) (internal quotations omitted)).  This broad reach is consistent with the Congressional purpose underpinning it: to "streamline immigration proceedings" and "eliminate[] the previous initial step in obtaining judicial review—a suit in a District Court," so that "'review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding.'" *Singh v. Gonzales*, 499 F.3d 969, 975-76 (9th Cir. 2007) (quoting H.R. Rep. No. 109-72 at 173 (May 3, 2005)); *Aguilar*, 510 F.3d at 9 ("In enacting section 1252(b)(9), Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings.").

Plaintiff's right-to-counsel claims are "part and parcel," *J.E.F.M.*, 837 F.3d at 1033, "of the process by which [his] removability will be determined," *Jennings*, 138 S. Ct. at 841, and can accordingly be raised only in a petition for review of a final order. This is so because right to "counsel claims are not independent or ancillary to the removal proceedings. Rather these claims are bound up in and an inextricable part of the administrative process." *J.E.F.M.*, 837 F.3d at 1033. "By any realistic measure," a claim that "detention and subsequent transfer . . . infringed

the[] rights to counsel," which is the essence of Plaintiff's claim, "possesses a district link to, and is inextricably intertwined with, the administrative process that Congress so painstakingly fashioned." *Aguilar*, 510 F.3d at 13. This is especially true because any right to counsel in removal proceedings derives from 8 U.S.C. § 1362, which specifically ties the right to counsel to removal proceedings. Plaintiff must therefore bring his right-to-counsel claims in a petition for review once a final order has issued. *See Hernandez Culajay v. McAleenan*, --- F. Supp. 3d ---, No. 19-3204, 2019 WL 3889737, at *6–7 (E.D. Pa. Aug. 19, 2019) (holding claim that transferring aliens to Mexico would unduly burden their right to counsel was barred from review by § 1252(b)(9)).

C.      Plaintiff's claims fail on the merits.

Even were the Court to reach Plaintiff's constitutional and nonrefoulement claims, they would fail on the merits, necessitating denial of his motion for a preliminary injunction.

1.      *Due Process*

Plaintiff claims that the government violated his due process rights by not holding a sufficient hearing prior to returning him to Mexico. Pl.'s PI Br. at 10. He also complains that he was not afforded access to counsel, given an interpreter, or provided a mechanism to appeal prior to his return. *Id.* at 12–13. To bring a due process claim, however, a plaintiff must show that "there was a cognizable liberty or property interest at stake." *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Plaintiff cannot do so.

"[A]n applicant for initial entry has no constitutionally cognizable liberty interest in being permitted to enter the United States." *Rafeedie v. INS*, 880 F.2d 506, 520 (D.C. Cir. 1989); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953) ("Aliens seeking entry from contiguous lands obviously can be turned back at the border without more."). Plaintiff apparently attempts to distinguish himself by arguing that he was not awaiting entry into the United

States, but was apprehended within the United States and detained here pending an admissibility determination. Pl.'s PI Br. at 10. But "[i]t is . . . firmly established that '[a]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country.'" *Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 58–59 (D.D.C. 1998) (citing *Gisbert v. United States Att'y Gen.*, 988 F.2d 1437, 1440 (5th Cir.1993)), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000). Thus, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).

Plaintiff relies on *Zadvydas v. Davis* for the proposition that due process applies to all aliens present within the United States. Pl.'s PI Br. at 10–11. But *Zadvydas* involved "aliens who were admitted to the United States but subsequently ordered removed." 533 U.S. 678, 682 (2001). The *Zadvydas* court specifically noted that "[a]liens" like Plaintiff, "who have not yet gained initial admission to this country would present a very different question." *Id.*; *see also Castro v. Dep't of Homeland Sec.*, 835 F.3d 422, 448 (3d Cir. 2016) ("[R]ecent clandestine entrants like Petitioners do not qualify for constitutional protections based merely on their physical presence alone."); *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1175 (D.N.M. 2014) ("Petitioner, who undisputedly crossed approximately nine miles over the border and was apprehended within 30 minutes of crossing, does not have any substantial ties to this country to place the nature of her rights near those of a permanent resident. Thus, for purposes of the constitutional right to due process, Petitioner's status is assimilated to that of an arriving alien."), *motion for relief from judgment granted on other grounds*, No. 14-0769, 2015 WL 7454248 (D.N.M. Sept. 23, 2015).

22

2.    *Equal Protection*

Plaintiff next insists that MPP is "motivated by invidious discrimination" and therefore is contrary to the equal protection clause. Pl.'s PI Br. at 13–17. Plaintiff does not—and cannot—contend that MPP is discriminatory on its face. It applies to "all citizens and nationals of countries other than Mexico . . . arriving in the United States by land from Mexico—illegally or without proper documentation." Ex. 1, DHS Guidance at 1. Instead, Plaintiff relies upon a series of statements attributed to the President of the United States, which he contends demonstrate racial bias as the true motivation behind MPP. Pl.'s PI Br. at 14–17.

But the Supreme Court has recently adopted a highly deferential standard of review in such circumstances, considering only whether a challenged admission policy "is plausibly related to the Government's stated objective" and upholding it "so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds." *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018). Plaintiff has not shown that MPP cannot be reasonably understood to result from its stated and constitutional grounds, which are: (1) reducing illegal immigration and false asylum claims, (2) preventing aliens from disappearing into the United States before a court decision may be rendered on their asylum claims, (3) allowing the government to focus its attention on more quickly assisting legitimate asylum seekers, (4) clearing a massive asylum backlog, and (5) ensuring that vulnerable populations are protected while awaiting a determination in Mexico. *See* Ex. 5, Press Release, *Secretary Kirstjen M. Nielsen Announces Historic Action to Confront Illegal Immigration* (Dec. 20, 2018). This is especially true because after "nine months" of observation, DHS has reaffirmed that MPP has been an "indispensable tool" in achieving these aims and in "addressing the ongoing crisis at the southern border and restoring integrity to the

23

immigration system." *See* Assessment of the Migrant Protection Protocols at 2. For this reason, Plaintiff's equal protection claim is unlikely to succeed.

3.    *Nonrefoulement*

Plaintiff next claims that MPP is arbitrary and capricious and contrary to law because it violates the government's nonrefoulement obligations. Pl.'s PI Br. at 17–28. But MPP provides for nonrefoulement procedures. *See* Ex. 6, ICE, *Migrant Protection Protocols Guidance* at 3–4 (Feb. 12, 2019) ("ICE Guidance"); Ex. 3, USCIS Guidance at 3–4. In particular, an alien subject to MPP may affirmatively state to a DHS agent or officer at any point while in custody that he or she has a fear of persecution or torture in Mexico, in which case that alien will be referred to USCIS for a screening interview with an asylum officer. Ex. 6, ICE Guidance at 3. And those procedures were followed here: Plaintiff was interviewed by an asylum officer who determined that he did not establish a clear probability of persecution or torture in Mexico. Ex. 4, Assessment Notice.

The agency's execution of these procedures is not subject to judicial review under "the principle of non-inquiry" as "such humanitarian considerations are within the purview of the executive branch and generally should not be addressed by the courts." *Hoxha v. Levi*, 465 F.3d 554, 563-64 (3d Cir. 2006); *see also Kiyemba v. Obama*, 561 F.3d 509, 518 (D.C. Cir. 2009) (Kavanaugh, J., concurring) ("[T]he Judiciary does not inquire into the treatment or procedures the extradited citizen or alien will receive in that country. It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds."); *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956-57 (9th Cir. 2012) (*en banc*) (holding that "separation of powers and the rule of non-inquiry block any inquiry into" the Secretary's fulfillment of nonrefoulement principles "other than compliance with her obligations under domestic law"). Thus, once, as here,

the agency abided by its prescribed non-refoulement procedures, the "court's inquiry shall have reached its end." *Id.* at 957.

Moreover, Plaintiff's nonrefoulement argument relies entirely upon provisions set forth in the "withholding of removal statute" at 8 U.S.C. § 1231 and its implementing regulations. *See* Pl.'s PI Br. at 18. As its name suggests, however, that statute applies only "when an alien is ordered removed," not when, as here, an alien is returned to Mexico during the pendency of removal proceedings. 8 U.S.C. § 1231(a); *see also* 8 U.S.C. § 1231(b)(3) ("[T]he [Secretary] may not remove . . . ."); *see also Matter of I-S- & C-S-*, 24 I. & N. Dec. 432, 434 (BIA 2008). Because the referenced statute and regulations do not apply to Plaintiff's return to Mexico, the government did not violate them.

      D.      <u>MPP is not a legislative rule requiring notice and comment.</u>

Finally, contrary to Plaintiff's contention, MPP did not need to undergo notice-and-comment rulemaking because it is not a "substantive, legislative rule[]." *Clarian Health West, LLC v. Hargan*, 878 F.3d 346, 356 (D.C. Cir. 2017). Rather, it is a "general statement[] of policy," that is exempt from notice-and-comment procedures. 5 U.S.C. § 553(b)(B). A general statement of policy, among other things, "advise[s] the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993). Significantly, however, policy statements "are binding on neither the public nor the agency," and the agency "retains the discretion and the authority to change its position . . . in any specific case." *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997). By contrast, a "substantive rule" subject to requirements for notice-and-comment rulemaking is one that is "finally determinative of the issues or rights to which it is addressed." *Pacific Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38

(D.C. Cir. 1974). These rules are "binding" and have the "force of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979).

Applying these principles, MPP is a statement of policy and therefore not subject to the APA's notice-and-comment requirements. Aliens who are "amenable to the [MPP] process" will be returned only after an exercise of discretion in an individual case: an alien can be returned under MPP only if the alien is one "who in an exercise of discretion the officer determines should be subject to the MPP process." *See* Ex. __, CBP Guidance at 1. Officers are not required to return any alien: "Officers, with appropriate supervisory review, retain discretion to process aliens for MPP or under other procedures (e.g. expedited removal), on a case-by-case basis." *Id.* And even for those aliens who are "more likely than not to face persecution or torture in Mexico" and thus not subject to return under MPP, "[o]fficers retain all existing discretion to process (or re-process) the alien for any other available disposition, including expedited removal, [notice to appear], waivers, or parole." *Id.* at 2. For these reasons, the Ninth Circuit properly recognized that "[t]he MPP qualifies as a general statement of policy because immigration officers designate applicants for return on a discretionary case-by-case basis." *Innovation Law Lab*, 924 F.3d at 509–10. This Court should take the same approach.

## III.  The remaining factors weigh against a preliminary injunction.

Plaintiff has not satisfied the remaining factors for a preliminary injunction, including: "(2) that [he] would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

As for injury, Plaintiff makes little effort to overcome this "very high bar." *Coal. for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008).

His brief vaguely states that he "continues to face risks to bodily integrity and safety daily" and that he fears deportation from Mexico back to Guatemala, but he does not describe those risks with sufficient particularity to demonstrate that they are actual and imminent. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (to warrant preliminary injunction, injury must be "actual and not theoretical" and "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm"). He cites a report from Amnesty International, *see* Pl.'s PI Br. at 32, but that report is dated January 2018 (before MPP) and does not relate to individuals returned to Mexico and seeking asylum in the United States. Plaintiff's statement says little about his current situation other than that he is currently in Nava, Coahuila staying at a church. ECF No. 5-3 at 3. He does not describe any imminent threat in this environment, only that he is "caged up without the ability to do anything." *Id.* As for Plaintiff's purported fear of deportation, he does not provide any basis for it. Indeed, Mexico has agreed to allow aliens who have received a Notice to Appear to remain in that country. Ex. __, DHS Guidance. And "MPP returnees in Mexico are provided access to humanitarian care and assistance, food and housing, work permits, and education." *See* Assessment of the Migrant Protection Protocols at 4. Plaintiff also references unspecified obstacles working with his attorney to prepare his asylum claim, Pl.'s PI Br. at 32–33, but he does not describe with particularity what these obstacles are. And the record in this case shows that Plaintiff has been able to work with his attorney to litigate this case, including preparing a translated statement in support of his motion for a preliminary injunction. *See* ECF No. 5-3.

Plaintiff's own delay also indicates a lack of irreparable harm. *See Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) ("Courts have found that '[a]n unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm.'") (quoting *Newdow v. Bush*, 355 F. Supp.

27

2d 265, 292 (D.D.C.2005)). As noted, after bringing this case on July 5, 2019, Plaintiff waited

over 2 weeks for file a motion for a preliminary injunction. *See Cruz v. Dep't of Homeland Sec.*,

No. 19-22780 (S.D. Fla.), ECF No. 6. After he eventually voluntarily dismissed that case on

August 3, *id.*, ECF No.17, he waited more than a month before filing essentially the same pleading

in this Court. *See* ECF No. 1. He then waited yet another month before refiling his motion for a

preliminary injunction on October 14. *See* ECF No. 5. These long and unexplained delays indicate

the absence of any imminent and irreparable harm. *See Open Top*, 48 F. Supp. 3d at 90.

Plaintiff also fails to show that the injunction would further the public interest and not

injure other parties. Plaintiff only asserts that the public has an interest in seeing the laws of

Congress faithfully executed and that the policy will tarnish the country's image globally. Pl.'s PI

Br. at 33–34. But, as noted above, the contiguous return authority was specifically granted to the

Secretary by Congress in § 1225(b)(2)(C). The government is simply exercising that authority.

## IV.    The injunction sought by Plaintiff is overbroad.

Even were Plaintiff entitled to an injunction, he is certainly not entitled to the broad

injunction that he seeks. Plaintiff asks this Court to declare unlawful and vacate MPP and all the

guidance associated with it and to enjoin the government from applying it to any applicant for

admission anywhere. But "[i]njunctive relief granted to a party in a lawsuit must be framed to

remedy the harm claimed by the party." *Aviation Consumer Action Project v. Washburn*, 535 F.2d

101, 108 (D.C. Cir. 1976). And the injunction should be "no broader than necessary to achieve its

desired goals." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994); *see also State of

Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330

(D.C. Cir. 2006) ("We have long held that an injunction must be narrowly tailored to remedy the

specific harm shown.") (quotations omitted). This is particularly true with respect to preliminary

injunctions. *United States Ass'n of Reptile Keepers, Inc. v. Jewell*, 106 F. Supp. 3d 125, 126 (D.D.C. 2015) ("[W]hen a court issues a preliminary injunction, it acts to preserve the parties' respective rights and interests while the case is pending, and it does not typically declare the challenged rule unlawful or vacate the rule."), *aff'd*, 852 F.3d 1131 (D.C. Cir. 2017). Pursuant to these principles, any preliminary injunction would have to be limited to Plaintiff alone.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be denied.

Dated: October 30, 2019                              Respectfully submitted,

                                                     JESSIE K. LIU, D.C. Bar #472845
                                                     United States Attorney

                                                     DANIEL F. VAN HORN, D.C. Bar #924092
                                                     Chief, Civil Division

                                                     By:    /s/ Johnny Walker
                                                     JOHNNY H. WALKER, D.C. Bar #991325
                                                     Assistant United States Attorney
                                                     555 4th Street, N.W.
                                                     Washington, District of Columbia 20530
                                                     Telephone: 202 252 2575
                                                     Email: johnny.walker@usdoj.gov

                                                     *Counsel for Defendants*